UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| J & J Sports Productions, Inc., | **CASE NO. 1:13-CV-842 AWI-JLT** |
| Plaintiff; | **ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** |
| v. | |
| Jose Del Refugio Rubalcaba Sandana a/k/a Jose Luis Rubalcaba, individually and d/b/a El Atoron Billiards, | (Doc. 18) |
| Defendants. | |

Plaintiff J & J Sports Productions, Inc. ("Plaintiff") brings this action against Jose Del Refugio Rubalcaba Sandana a/k/a Jose Luis Rubalcaba, individually and d/b/a El Atoron Billiards ("Defendant") for violations of 47 U.S.C. Sections 605 and 553, and California state claims of conversion and violation of California Business and Professions Code section 17200, California's Unfair Competition Law, for Defendant's unauthorized displaying of television programming for which Plaintiff owned exclusive distribution rights. Plaintiff moves for summary judgment on its federal claims and for conversion.

I. BACKGROUND

Plaintiff is a closed circuit distributor of sports and entertainment programming. Doc. 18-4 (Plaintiff's Affidavit), 1:26-27. The programming is distributed by satellite and cable television providers such as Comcast Cable, DirecTV, and Dish Network. Doc. 18-4, 4:17-19. Plaintiff purchases the commercial exhibition licensing rights and then sublicenses the commercial exhibition rights to its commercial customers. Doc. 18-4, 2:5-6, 4:17-20. In order for the sublicensee to exhibit it, Plaintiff must direct the programming provider to provide an unencrypted signal to the sublicensee. Doc. 18-4, 4:20-24. There are unlawful methods by which a person can intercept and broadcast Plaintiff's programming. Doc. 18-4, 3:23-24.

Plaintiff purchased and retained the exclusive commercial licensing rights to "Manny Pacquiao v. Timothy Bradley, WBO Welterweight Championship Fight Program," ("the Program") telecast nationwide on June 9, 2012. Doc. 18-4, 1:27-2:2. On June 9, 2012 around 8 p.m., Defendant displayed the program on three television sets at El Atoron, a bar. Doc. 18-2 (Affidavit of Gilbert Tate), p.2-3. Defendant had not obtained sublicensing rights from Plaintiff. Doc. 18-4, 2:8-9. Defendant does not dispute that the program was displayed at El Atoron on June 9, 2012 and that Defendant did not purchase sublicensing rights. Doc. 18-3, Exh. 1 (Plaintiff's First Request for Admissions), 2:15-3:7, 4:2; Exh. 2 (Defendant's Response to First RFAs), 1:17-22, 2:3.

However, Defendant's declaration in support of his opposition states, "there was no interception or theft of a TV signal." Doc. 19-1 (Defendant's Decl. iso Defendant's Opposition), 1:12-13. Defendant further declares, "I certainly did not authorize that any [T]V signal be intercepted or TV programming displayed without properly paying for it. If that was done it was without my consent, permission, or even knowledge. At the time of the alleged incident I was not in control of what was being shown on the TV at that specific time." Doc. 19-1, 1:15-1:19. And "based upon my research into the events on that day in question I understand that one of the customers brought their internet connection to the facility to watch the fight and it was done without my consent and approval, I had no idea that it was done illegally." Doc. 19-1, 2:18-20.

Plaintiff moves for summary judgment, arguing that 47 U.S.C. Section 605 ("Section 605") and 47 U.S.C. Section 553 ("Section 553") are strict liability statutes and that Defendant must be liable to Plaintiff under Section 605 or Section 553 solely based on the undisputed fact that Defendant exhibited the Program without Plaintiff's authorization. Doc. 18 (Plaintiff's Memo in Support of Motion), 5:2, 6:13-22. Plaintiff also moves for summary judgment as to its conversion claim on the grounds that it had exclusive commercial rights to the Program, which was allegedly intercepted by Defendant. Doc. 18, 8:10-21.

II.     SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Satterfield v. Simon & Schuster, Inc., 569 F.3d 946, 950 (9th Cir 2009). The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and of identifying the portions of the declarations, pleadings, and discovery that demonstrate an absence of a genuine issue of material fact. Celotex, 477 U.S. at 323; Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007). A fact is material when, under the governing substantive law, it could affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Freeman v. Arpaio, 125 F.3d 732, 735 (9th Cir. 1997). A dispute about a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment. Anderson, 477 U.S. at 248, T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987).

In resolving the summary judgment motion, the evidence of the opposing party is to be believed (Anderson, 477 U.S. at 255), and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party (Matsushita, 475 U.S. at 587). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts" are not to be decided by the judge. Anderson, 477 U.S. at 255.

III.    LIABILITY UNDER 47 U.S.C. SECTION 605 OR 47 U.S.C. SECTION 553

Section 605 provides, in relevant part, that it is unlawful for any person, who is not authorized by the sender, to intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of the intercepted communication to any person.[1] 47 U.S.C. § 605(a).

Section 553 states, "No person shall intercept or receive or assist in intercepting or

---

[1] 47 U.S.C. § 605(a) identifies other ways to be found liable of violation of Section 605; however, Plaintiff has not addressed these in its motion.

receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law." 47 U.S.C. § 553(a)(1).

While there is no dispute that Defendant was not authorized to display the Program, or that Defendant did display the program, Plaintiff has not adequately demonstrated that Defendant "intercepted" a "radio communication" or a "cable communication."

### A. Applicable Statute

Interception or receipt of a "radio communication" is required for each possible violation of Section 605. 47 U.S.C. § 605(a). "The term 'radio communication' or 'communication by radio' means the transmission by radio of writing, signs, signals, pictures, and sounds of all kinds […]." 47 U.S.C. § 153(40). This is in contrast with the term "wire communication," which means "the transmission of writing, signs, signals, pictures, and sounds of all kinds by aid of wire, cable, or other like connection between the points of origin and reception of such transmission […]." 47 U.S.C. § 153(59).

Courts have found that Section 605 exclusively applies to radio communications and satellite communications, but not to cable communications, which are exclusively covered by Section 553. See e.g., Joe Hand Prod. v. Behari, 2013 U.S. Dist. LEXIS 37277, *10 (E.D. Cal. Mar. 15, 2013); J & J Sports Prods. v. Torres, 2011 U.S. Dist. LEXIS 14737, *12 (E.D. Cal. Dec. 21, 2011); J & J Sports Prods, Inc. v. Manzano, 2008 U.S. Dist. LEXIS 84931, *6-7 (N.D. Cal. Sept. 29, 2008)("A signal pirate violates section 553 if he intercepts a cable signal, he violates section 605 if he intercepts a satellite broadcast. But he cannot violate both by a single action of interception."); see also J&J Sports Prods. v. Mandell Family Ventures, LLC, 2014 U.S. App. LEXIS 8423, *14 (5th Cir. Tex. May 2, 2014) (Section 605 does not encompass receipt or interception of communications by wire from a cable system). Additionally, Section 605 and Section 553 require different elements to find liability under each, and have different damages provisions. See 47 U.S.C. § 553; 47 U.S.C. § 605; Joe Hand Promotions, Inc. v. Smith, 2010 U.S. Dist. LEXIS 56462, *7, 10 (D. Ariz. June 7, 2010).

Plaintiff's motion discusses liability under Section 605 or Section 553 together.[2] However, Plaintiff cannot recover under both Section 605 and Section 553 for the same alleged interception. Plaintiff does not provide any evidence as to whether the communication at issue was a radio communication or a cable communication. Instead, Plaintiff's evidence states that it relies upon satellite *and* cable television providers to distribute signals of its licensed programming to its commercial customers. Doc. 18-4, 4:17-20. It says that the signal pirate can unlawfully intercept and broadcast Plaintiff's programming by cable TV *or* satellite. Doc. 18-4, 3:22-4:9. On June 9, 2012, the investigator did not see a cable box or a satellite dish at El Atoron. Doc. 18-2, p.2. Defendant denies that he had an account with DirecTV or a satellite service and denies that he used an illegal decoder box or a satellite receiver box. Doc. 18-3, Exh. 1, 5:10-28; Exh. 2, 2:11-15.

Whether the communication was by radio or cable is a material fact because it determines which statute, either Section 605 or Section 553, actually applies. These statutes have different requirements for both liability and damages. Because Plaintiff has failed to present any evidence that the alleged interception was either a radio communication or a cable communication; Plaintiff has not met its burden.  Summary judgment on Plaintiff's Section 605 or Section 553 claims will be denied.

B.  Interception

Plaintiff has not met its burden to demonstrate that Defendant intercepted the communication. Plaintiff argues that the fact that the Program was shown at El Atoron without authorization is sufficient to conclude that Defendant intercepted the Program because there is no other way for Defendant to display the Program. Doc. 18, 6:16-17. Plaintiff argues that any unlawful publication of the Program is a violation of Section 605 or Section 553, and that willfulness is not required to establish liability. Doc. 18, 6:23-7:5.

Plaintiff's statements of law are not accurate.  First, by the statute's plain language, finding unlawful publication is *one* required element of *some* claims brought under Section 605. See 47 U.S.C. § 605(a). Second, cases cited by Plaintiff demonstrate that willfulness as to a *knowing*

---

[2] Plaintiff appears to attempt to elect to recover under Section 605, although its briefing is unclear. As a result, the Court will address both Sections 605 and 553.

5

*violation of the law* is not required to establish liability. J & J Sports Prods. v. Mendoza-Govan, 2011 U.S. Dist. LEXIS 47075, *15-16 (N.D. Cal. Apr. 25, 2011); Integrated Sports Media, Inc. v. Canseco, 2012 U.S. Dist. LEXIS 25573, *2 (C.D. Cal. Feb. 27, 2012). In Mendoza-Govan, the defendant's good faith belief in the propriety of her actions was irrelevant to determining liability. J & J Sports Prods. v. Mendoza-Govan, 2011 U.S. Dist. LEXIS 47075, *15-16. In Canseco, the defendants' mistake of law that they did not know they had to get authorization to broadcast the program was irrelevant for liability. Integrated Sports Media, Inc. v. Canseco, 2012 U.S. Dist. LEXIS 25573, *2. Neither of these cases state that willfulness as to the conduct itself is irrelevant to determining liability. Plaintiff must demonstrate that there is no genuine issue that Defendant committed an act of interception to find liability under the relevant provisions of Section 605 or Section 553.[3] See 47 U.S.C. § 605(a), 47 U.S.C. § 553(a)(1).

Defendant admits that he is the owner and manager of El Atoron, that he was present at El Atoron on June 9, 2012, and that the Program was shown at El Atoron that day. Doc. 18-3, Exh. 1, 4:2, 6:10-22; Exh. 2, 2:3, 2:19-23. However, Defendant states that he did not intercept a signal, he did not authorize interception, and he was not aware of interception.  Doc. 19-1, 1:12-19. He states that he later found out that a customer brought an internet connection to El Atoron to watch the fight without his consent. Doc. 19-1, 2:18-20.

At the summary judgment stage, Defendant's evidence is believed, all reasonable inferences are drawn in Defendant's favor, and the Court does not make credibility determinations. Defendant's evidence indicates that he did not commit any act that intercepted the Program. A reasonable inference may be drawn in Defendant's favor that a customer or someone other than Defendant caused the Program to be displayed on Defendant's TVs.

A reasonable jury could find that Defendant did not intercept the communication. Hence, Plaintiff does not meet its burden to demonstrate that there is no genuine dispute as to whether Defendant, individually or d/b/a El Atoron intercepted the communication.

IV.     CONVERSION

---

[3] Plaintiff has presented no arguments that Defendant received or assisted in intercepting or receiving unauthorized cable communications, which are acts also prohibited under Section 553.

The elements of a conversion claim under California law are: "(1) the plaintiff's ownership or right to possession of the property at the time of the conversion; (2) the defendant's conversion by a wrongful act or disposition of property rights; and (3) damages." <u>Mindys Cosmetics, Inc. v. Dakar</u>, 611 F.3d 590, 601 (9th Cir. 2010)(citing <u>Oakdale Vill. Group v. Fong</u>, 43 Cal. App. 4th 539, 543-44 (Cal. Ct. App. 1996); <u>L.A. Fed. Credit Union v. Madatyan</u>, 209 Cal. App. 4th 1383, 1387 (Cal. Ct. App. 2012). The act of conversion "must be done knowingly or intentionally done, but a wrongful intent is not necessary." <u>In re Peklar</u>, 260 F.3d 1035, 1037 (9th Cir. 2001); <u>Taylor v. Forte Hotels Int'l</u>, 235 Cal. App. 3d 1119, 1124 (Cal. Ct. App. 1991).

Plaintiff demonstrates that it had the right of possession of the commercial distribution rights to the Program on June 9, 2012. Plaintiff also demonstrates that it receives fees from commercial customers to exhibit programs to which Plaintiff holds commercial distribution rights, and that Plaintiff did not receive this fee from Defendant for exhibiting the Program at El Atoron on June 9, 2012. However, Plaintiff is not able to show conversion by a wrongful act, and is not entitled to summary judgment on its conversion claim.

As discussed, viewed in the light most favorable to Defendant, Defendant's evidence indicates that he did not intercept a communication signal or otherwise intentionally commit any act in order to exhibit the Program. A reasonable jury could find that Defendant did not commit any wrongful act or commit an intentional act of interference with Plaintiff's property right in the Program. Therefore, Plaintiff does not meet its burden to demonstrate that there is no genuine issue of material fact as to whether Defendant committed a wrongful act, and Plaintiff is not entitled to summary judgment on its conversion claim.

V.   ORDER

For the foregoing reasons, Plaintiff's motion is DENIED.

IT IS SO ORDERED.

Dated:   July 22, 2014

SENIOR DISTRICT JUDGE